IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 25-cv-04094-NYW-KAS

ALLISON ROBERTS,

      Plaintiff,

v.

KAYLEEN FAIN,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the court on the Motion to Dismiss Plaintiff's Complaint (or "Motion") filed on February 26, 2026. [Doc. 14]. The Motion is fully briefed. [Doc. 36; Doc. 46]. Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part as moot**.

## BACKGROUND

The Court draws the following facts from the Complaint and Jury Demand, [Doc. 1], and the Motion and takes them as true when ruling on the Motion. On December 23, 2023, Plaintiff Allison Roberts ("Plaintiff" or "Ms. Roberts") was skiing at the Telluride Ski Resort, which was operated by Telluride Ski & Golf LLC ("TSG"). [*Id.* at ¶ 13; Doc. 14-1 at ¶ 2]. Defendant Kayleen Fain ("Defendant" or "Ms. Fain"), whom the Parties have stipulated was an employee of TSG at the time, was also skiing, and collided with Plaintiff from behind. [Doc. 1 at ¶ 42; Doc. 35 at ¶ 2]. The collision caused serious injuries to Ms. Roberts. [Doc. 1 at ¶ 50].

Use of the resort required purchase of a ski pass and acceptance of terms set out in the "Telluride Ski and Golf Assumption of Risk, Release of Liability, and Indemnity Agreement" ("Agreement").  [Doc. 14-1 at ¶ 3].  Consequently, prior to the collision, Plaintiff bought passes for the 2022/2023 and 2023/2024 seasons, and her father Ken Roberts electronically signed the Agreement on Plaintiff's behalf.  [*Id.* at ¶ 5]; *see also* [Doc. 14-3 at 1].  The Parties do not dispute that Plaintiff's father had authority to sign the Agreement on her behalf.  *See* [Doc. 14; Doc. 36].

The Agreement states that:

> All claims arising from or related to any Activity by Participant, including for injury to person or property and/or death shall be governed by Colorado law, without regard to conflicts of law principles, and that exclusive jurisdiction shall be in the State District Court, San Miguel County, Colorado.  This Agreement shall be binding to the fullest extent permitted by law.

[Doc. 14-2 at 2; Doc. 14-4 at 2].  The Agreement also states that the word "Activity" included skiing.  [Doc. 14-2 at 1; Doc. 14-4 at 1].

Following the collision, Plaintiff filed suit in this Court against Defendants Fain; TSG; TSG Asset Holdings, LLC; and Merritt Charles Horning (collectively, "Defendants") on December 19, 2025.  [Doc. 1 at 1, 14].  Defendants then filed the instant Motion, moving to dismiss for (1) the doctrine of *forum non conveniens*, based on a reading of the Agreement to include a valid and mandatory forum-selection clause, or (2) failure to state a claim against any Defendant other than Ms. Fain based on the application of the Colorado Ski Safety Act.  [Doc. 14 at 1].  After Defendants filed the Motion, the Parties stipulated to the dismissal of Plaintiff's claims against all Defendants except Ms. Fain,[1]

---

[1] The Motion is thus **DENIED as moot** to the extent it seeks dismissal of Defendants other than Ms. Fain.

leaving only the *forum non conveniens* doctrine as possible grounds for dismissal.  [Doc. 35 at ¶ 1].  The Court addresses the Parties' arguments regarding *forum non conveniens* below.

## LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*"  *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013).  Under the doctrine of *forum non conveniens*, a court may order the dismissal of an action over which it declines jurisdiction because the court lacks a mechanism to transfer it to the proper forum.  *See Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019); 14 Wright & Miller's Federal Practice & Procedure § 3828 (4th ed., Apr. 2026 update).  Traditionally, the doctrine requires a two-step threshold test to determine whether it applies:  (1) there must be an adequate and alternative forum in which the defendant is amenable to process, and (2) foreign law must be applicable.  *See Yavuz v. 61 MM Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009).  If these criteria are satisfied, courts then balance a range of public and private interest considerations, and the defendant bears a "heavy burden" in opposing the plaintiff's chosen forum.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007) (quotation omitted).

However, application of the *forum non conveniens* doctrine changes when it is invoked pursuant to a valid and mandatory forum-selection clause.  *Kelvion*, 918 F.3d at 1091; *Atl. Marine*, 571 U.S. at 51.  In such a case, for the doctrine to apply in the first place, the clause must be applicable, mandatory, and valid.  *Dupray v. Oxford Ins. Co. TN LLC*, 645 F. Supp. 3d 1095, 1101 (D. Colo. 2022).  If the clause meets those criteria,

3

courts grant no weight to the plaintiff's choice of forum or to the parties' private interests, since the existence of a valid clause suggests that the parties took no issue with the agreed-upon forum. *Kelvion*, 918 F.3d at 1091. Overall, courts give the clause "controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quotation omitted).

As a result, once a valid forum-selection clause is established, only public interest factors may weigh against dismissal. *Id.* at 64. Public-interest factors include: (1) the administrative difficulties of courts with congested dockets that can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Id.* at 62 n.6. And since public interest factors "rarely defeat" *forum non conveniens*, the forum-selection clause controls except in unusual cases. *Id*. at 64.

## ANALYSIS

### I.    Forum-Selection Clause

#### A.    Applicability

The first inquiry is whether the forum-selection clause within the Agreement is applicable, valid, and mandatory. Regarding applicability, "[t]he scope of a forum-selection clause is evaluated according to the ordinary principles of contractual interpretation." *See Kelvion*, 918 F.3d at 1092. The Agreement's forum-selection clause applies to "[a]ll claims arising from or related to any Activity by Participant." [Doc. 14-4 at 2]. Under the Agreement, "Activity" includes skiing and "using for any purpose the

4

Released Parties' permit area, property, slopes, [and] grounds." [*Id.* at 1]. And the Agreement defines "Released Parties" to include "TSG Ski & Golf, LLC" and its "employees." [*Id.*]. It is undisputed that the collision between Plaintiff and Defendant, a TSG employee, took place at the Telluride Ski Resort. [Doc. 1 at ¶ 8; Doc. 17 at 2 ¶ 8]. Because Plaintiff's claims "aris[e] from" an "Activity" as defined by the plain language of the Agreement, the forum-selection clause appears to bar litigation in this forum.

Plaintiff disputes this conclusion, arguing instead that Defendant cannot assert the clause since she was not a "Released Party" that the clause was intended to benefit. [Doc. 36 at 6–7]. Under Colorado law,[2] a third-party beneficiary may enforce a contract if the parties to the agreement intended to confer a benefit on the third party when contracting. *Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 412 P.3d 709, 718 (Colo. App. 2015); *see also Otimo Music, Inc. v. Royalty Exch., Inc.*, No. 18-cv-00006-RBJ, 2018 WL 6697073, at *3–4 (D. Colo. Dec. 20, 2018) (applying Colorado law and enforcing forum-selection clause asserted by intended third-party beneficiary). "The intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

The language of the Parties' Agreement reflects an intent to make Ms. Fain a third-party beneficiary. The Agreement states that "[t]he purpose of this Agreement is to exempt, waive, and release Released Parties from any and all liability for wrongful death,

---

[2] "In this circuit, forum-selection clauses are . . . construed according to the governing law selected in the contract." *Kelvion*, 918 F.3d at 1092 n.2. The Agreement says that "[a]ll claims . . . shall be governed by Colorado law," so Colorado law applies. [Doc. 14-4 at 2].

personal injury, and property damage, including, but not limited to liability arising from the negligence of Released Parties." [Doc 14-4 at 1]. As a TSG employee, [Doc. 35 at ¶ 2], Defendant was a "Released Party" per the Agreement, *see* [Doc. 14-4 at 1]. And Plaintiff's claims fall squarely within the Agreement's stated purpose—they deal with Defendant's potential liability for Plaintiff's personal injury and Defendant's alleged negligence. *See* [Doc. 1]. Based on the plain language of the Agreement, the Court finds that Defendant is an intended third-party beneficiary to the Agreement and may invoke the forum-selection clause.

### B.    Validity

As for validity, the Court starts from the principle that "[f]orum selection provisions are prima facie valid." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) (quotation omitted). A party resisting enforcement therefore "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching." *Id.*; *see also Schroll v. Dnsfilter, Inc.*, No. 24-cv-01895-CNS-STV, 2024 WL 5356884, at *2 (D. Colo. Dec. 9, 2024) (finding no duress or fraud where the plaintiff did not argue that the forum-selection clause itself was procured through duress or fraud); *Carr v. Wells*, No. 20-cv-03319-PAB-SKC, 2022 WL 910953, at *6–7 (D. Colo. Mar. 28, 2022) (finding no duress where the plaintiff did not show that "force or threats . . . actually subjugated [its] mind" (quotation omitted)). In the present case, Plaintiff has made no attempt to prove that TSG contracted with her fraudulently or deceptively, so the Court does not find that the forum-selection clause is invalid on grounds of fraud or deception. *See* [Doc. 36].

Instead, Plaintiff suggests that the Agreement is an adhesion contact resulting from TSG's "overweening bargaining power" and her inability to negotiate the forum-selection

6

clause.  [*Id.* at 9–10].  As an initial matter, the Supreme Court has rejected the proposition that a "nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).  And to the extent Ms. Roberts relies on Colorado law regarding release agreements, the Colorado Supreme Court has held that disparate bargaining power is irrelevant for assessing contracts tied to recreational businesses.  *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004).  The court in *Chadwick* held that since recreational businesses are not "practically necessary" for the public, bargaining disparity does not matter in determining the validity of release agreements between individuals and such businesses.  *Id.*  Because skiing and ski resort activities are inherently recreational, any bargaining imbalance between Plaintiff and TSG is immaterial to the validity of the Agreement.  Thus, while the Court addresses Ms. Roberts's public policy arguments below, the Court does not find it "unreasonable," as a matter of Colorado contract law, to enforce a clause that a party has willingly agreed to. *See Riley*, 969 F.2d at 957–58.  The forum-selection clause is accordingly valid.

### C.    Mandatory

Though framed as an argument with respect to "jurisdiction" and "venue," Plaintiff challenges whether the forum-selection clause is mandatory or permissive.  [Doc. 36 at 3–6].  "The difference between a mandatory and permissive forum selection clause is that mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum, [and that] permissive forum-selection clauses . . . do not prohibit litigation elsewhere."  *Am. Soda, LLP v. U.S. Filter Wastewater*

*Grp.*, 428 F.3d 921, 926–27 (10th Cir. 2005) (cleaned up) (holding that clause designating "exclusive forum" was mandatory).

Plaintiff relies heavily on *K & V Scientific Co. v. Bayerisch Motoren Werke Aktiengesellschaft*, 314 F.3d 494 (10th Cir. 2002), to suggest that the clause is permissive since it does not mention the word "venue" explicitly.  [Doc. 36 at 3–4].  She argues that the doctrines of venue and jurisdiction are distinct and thus warrant special attention by contracting parties if the resulting contracts are to be fully mandatory.  [*Id.*].  In *K & V*, the Tenth Circuit held that "where only jurisdiction is specified . . . the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."  314 F.3d at 499 (quotation omitted).  Because the clause in *K & V* mentioned only jurisdiction, not venue, *and* did so in "non-exclusive terms," the *K & V* court concluded that the clause was permissive, not mandatory.  *Id.* at 500.  Plaintiff urges this Court to conclude the same here.

Although venue and jurisdiction are distinct, the law gives contracting parties the flexibility to create mandatory forum-selection clauses without utilizing these two terms in tandem.  *See id.* at 499; *Am. Soda*, 428 F.3d at 926.  Unlike the clause in *K & V*, the Agreement's forum-selection clause contains "further language" indicating the Parties' intent to make venue exclusive.  314 F.3d at 499.  By using the phrase "exclusive jurisdiction," the Agreement plainly indicates that jurisdiction is appropriate only in the "State District Court [of] San Miguel County, Colorado."  [Doc. 14-4 at 2]; *see Am. Soda*, 428 F.3d at 927.  Given the exclusivity present, the lack of the word "venue" is no reason to treat the Parties' clause as permissive rather than mandatory.  Indeed, other courts within the Tenth Circuit have found that the phrase "exclusive jurisdiction" makes a forum-

8

selection clause mandatory. *See, e.g.*, *Finucane Enters., Inc. v. Arizant Healthcare, Inc.*, No. 05-cv-02163-JWL, 2005 WL 8160523, at *3 (D. Kan. Aug. 25, 2005); *Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, No. 2:04-cv-00592-TC, 2005 WL 2206128, at *7 (D. Utah. Sept. 12, 2005). The Court concurs with these decisions and respectfully concludes that the Parties' forum-selection clause is mandatory. [Doc. 14-4].

## II.    Public Interest Factors

Having established that the forum-selection clause is applicable, valid, and mandatory, the burden is on Plaintiff to demonstrate that the relevant public interest factors weigh against dismissal. *Dupray*, 645 F. Supp. 3d at 1108. A recent decision from this District, *Huber v. Granby Realty Holdings, LLC*, offers a helpful parallel to this case. No. 17-cv-03024-RM-MEH, 2019 WL 2299799 (D. Colo, May 30, 2019). *Huber* featured a lawsuit filed in federal court that arose out of injuries at a ski slope. *Id.* at *1. Through a forum-selection clause, the parties were bound to use state courts in the county that encompassed the ski slope to resolve their dispute. *Id.* The *Huber* court found that three out of the four public interest factors identified by *Atlantic Marine* favored dismissal. *Id.* Because the injury occurred within the agreed-upon forum, litigating in that forum would have been more convenient for witnesses than litigating in federal court. *Id.* And since the plaintiffs also resided in the agreed-upon forum and had invoked questions of state law, the controversy was localized and thus best decided in a local court, and it would have been more appropriate to answer state law questions in state court than in federal court. *Id.* Since no information on docket congestion was available, the court did not address the corresponding public interest factor. *Id.*

Here, as in *Huber*, three out of the four public interest factors favor dismissal. Because Plaintiff has not presented any information regarding docket congestion as compared between this District and courts in San Miguel County, the Court cannot conclude that factor favors her.[3]  Next, like *Huber*, Plaintiff's injury occurred within the forum designated by the clause, so there can be no burden on jurors by trying a case for events that occurred in their county.  [Doc. 1 at ¶¶ 13, 61–62].  And since Plaintiff invoked Colorado law in her Complaint, the state court would not have to apply foreign law.  [*Id.*] To be sure, unlike *Huber*, Plaintiff does not reside in the designated forum, being a resident of New York.  [Doc. 36 at 6].  But that fact—without more—does not delocalize the nature of the controversy enough to push that factor against dismissal, since the relevant conduct and injury occurred in San Miguel County.  [Doc. 1 at ¶ 13].

## III.    Effect of the Statute of Limitations

Finally, the Court considers Plaintiff's suggestion that the adequate and alternative forum prong of the traditional two-part *forum non conveniens* analysis applies alongside the presence of a valid and mandatory forum-selection clause.  [Doc. 36 at 11–12]. Plaintiff argues that the agreed-upon forum cannot be adequate since the relevant statute of limitations would bar her claim following a dismissal under *forum non conveniens*.  [*Id.*].

---

[3] The Court notes, however, that the civil caseload for the District of Colorado has increased significantly over the past year.  Based on data from the Clerk of Court, there were 4,361 pending civil cases in this District as of May 31, 2026, as compared to 3,349 pending cases at the same time in 2025.  And the total number of civil cases filed in 2025—4,234—was well over the previous ten-year average of less than 3,700 cases. *See* N. Reid Neureiter, *2024: The Year in Review*, U.S. District Court, District of Colorado (2025), http://www.cod.uscourts.gov/Portals/0/Documents/DistrictStats/District_Facts_Fi gures_2024.pdf.

Given *Atlantic Marine*, however, this interpretation of the law is unpersuasive.  *See Atl. Marine*, 571 U.S at 67.

Post-*Atlantic Marine*, it is unclear whether a federal court must assess the adequacy of the forum designated by a forum-selection clause.[4]  In general, though, if an alternative forum is "so clearly inadequate . . . that it is no remedy at all," then a district court may conclude that "dismissal would not be in the interests of justice."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).  But in *Atlantic Marine*, the Supreme Court acknowledged that enforcing a forum-selection clause through *forum non conveniens* may lead to a "harsh result."  571 U.S. at 66 n.8 (cleaned up).  The doctrine "even makes it possible for plaintiffs to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate."  *Id.* (cleaned up).  So, "when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause . . . dismissal would work no injustice on the plaintiff."  *Id.*  As the Fifth Circuit has explained, a contrary rule would permit a plaintiff to "simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum."  *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 250 (5th Cir. 2023) (quotation omitted).  The Court concurs with this reasoning and finds that, since Plaintiff filed in this District

---

[4] *Compare, e.g.*, *Kelvion*, 918 F.3d at 1091 (stating that, if a valid forum-selection clause applies, the court "may apply the doctrine of *forum non conveniens*" based on the public interest factors, without reference to the adequacy of the forum), *and* 14D Wright & Miller's Federal Practice & Procedure § 3828.5 (explaining that a forum-selection clause merely "affects," rather than eliminates, the analysis of the adequacy of an alternative forum), *with Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023) (holding that the "'available and adequate' framework" does not apply in cases involving a forum-selection clause, and the court need only determine whether enforcing the clause would be "unreasonable under the circumstances").

instead of the agreed-upon forum, dismissal "work[s] no injustice" despite the impact of the statute of limitations.[5]  *Atl. Marine*, 571 U.S. at 66 n.8.

"[F]orum-selection clauses should control except in unusual cases."  *Id.* at 64. Plaintiff has not shown that this is an unusual case, so the Court will enforce the forum-selection clause.  The Motion is respectfully **GRANTED**, and Plaintiff's claims are **DISMISSED without prejudice**.  *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 668 (10th Cir. 2020) (stating that dismissal for *forum non conveniens* is without prejudice).

### CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    The Motion to Dismiss Plaintiff's Complaint [Doc. 14] is **GRANTED in part** and **DENIED in part as moot** as set forth herein;

(2)    Plaintiff's claims are **DISMISSED without prejudice**; and

(3)    The Clerk of Court is **DIRECTED** to enter judgment and **TERMINATE** this case.

DATED:  June 11, 2026                         BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[5] As Plaintiff points out, she may still be able to avoid the statute of limitations through equitable tolling.  *See* [Doc. 36 at 14–15].  She may press that argument in state court.

12